UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----

STEVEN WILLIAMS,

      Plaintiff,    16 Civ. 4315 (JGK)

  - against -      MEMORANDUM OPINION AND
                ORDER

THE CITY OF NEW YORK, ET AL.,

      Defendants.

----

JOHN G. KOELTL, District Judge:

  The plaintiff, Steven A. Williams, brings this action pro se pursuant to 42 U.S.C. § 1983, alleging that his Fourth and Fourteenth Amendment rights were violated by the defendants when he was brought against his will from the 9th Precinct of the New York City Police Department ("NYPD") to Mount Sinai Beth Israel Hospital ("Beth Israel") and involuntarily committed. The plaintiff has named Beth Israel and doctors at Beth Israel, as well as the City of New York and NYPD officers. The plaintiff also initially alleged a claim of medical malpractice against Beth Israel and the doctors who treated him at the hospital.

  Currently pending before the Court are two motions to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.[1] For the following reasons, the motion to dismiss is

----

[1] Motions to dismiss were filed by two sets of defendants. A motion was filed by the City of New York and Deputy Inspector John Cappelman (the "City Defendants"). A second motion was filed by Dr. Anthony Lujack, Dr. David Klahr, and Dr. Aaron Patterson (the "Hospital Defendants"). Some defendants in this case have not yet been served. The unserved defendants are:

denied as to the City Defendants, but granted as to the Hospital Defendants.

I.

In deciding a motion to dismiss pursuant to Rule 12(b)(6), the allegations in the complaint are accepted as true, and all reasonable inferences must be drawn in the plaintiff's favor. McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007). The Court's function on a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir. 1985). The Court should not dismiss the complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). While the Court should construe the factual allegations

---

NYPD Police Officer Zulerna Porter, NYPD Police Officer Kevin Dwyer, Dr. Malaga Aragon, Dr. Goldberg, Dr. Roccisano and Beth Israel Mount Sinai Hospital. Beth Israel Mount Sinai Hospital was named in the caption of the initial complaint but not in the Amended Complaint filed on May 3, 2016, although it is mentioned in the text of the "Parties" section and of the Second Claim alleging a violation of § 1983 by the Hospital Defendants.

in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions." Id.

When faced with a pro se complaint, the Court must "construe [the] complaint liberally and interpret it to raise the strongest arguments that it suggests." Chavis v. Chappius, 618 F.3d 162, 170 (2d Cir. 2010) (citation and internal quotation marks omitted). The Court may also consider allegations that are contained in the plaintiff's opposition papers. See Burgess v. Goord, No. 98cv2077, 1999 WL 33458, at *1 n.1 (S.D.N.Y. Jan. 26, 1999) (collecting cases); see also Kaplan v. New York State Dep't of Corr. Servs., No. 99cv5856 (JGK), 2000 WL 959728, at *1 (S.D.N.Y. July 10, 2000). "Even in a *pro se* case, however, . . . threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Chavis, 618 F.3d at 170 (citation omitted). Thus, although the Court is "obligated to draw the most favorable inferences" that the complaint supports, it "cannot invent factual allegations that [the plaintiff] has not pled." Id. See also Estevez v. City of New York, No. 16cv00073 (JGK), 2017 WL 1167379, at *1 (S.D.N.Y. Mar. 28, 2017).

## II.

The following facts are taken from the plaintiff's Amended Complaint ("AC"), or his briefs filed in opposition to the

3

motions at issue, see Kaplan, 2000 WL 959728, at *1, and are assumed to be true for the purposes of this motion to dismiss.

Prior to the events at issue in this case, the plaintiff worked as a derivatives trader, portfolio manager, and strategist on Wall Street. AC ¶ 10. In April 2012, the plaintiff published a report which allegedly implicated investment banks in manipulating the high frequency trading markets. AC ¶ 11. In response to this report, the plaintiff's employer "mounted a shocking and outrageous retaliation campaign to defame him as mentally ill and undermine his credibility as a whistleblower". AC ¶ 12.

In September 2012, the plaintiff was allegedly forced to leave his job due to the retaliation. AC ¶ 15. The plaintiff alleges that the firm and its Chief Executive Officer subjected the plaintiff to "Gaslighting", which the plaintiff defines as "manipulating a []mentally healthy person[] by psychological means into believing he's mentally ill". AC ¶ 13.

In response to this behavior by his former employer, the plaintiff sought to speak with an Assistant District Attorney about the "potential criminal activity stemming from [the] retaliation campaign against him." AC ¶ 24. On each of multiple attempts, the plaintiff was told that the District Attorney's office could not help him. AC ¶ 24-25.

After these failed attempts to get the District Attorney involved, the plaintiff turned to the NYPD. AC ¶ 26. On December 2, 2013, the plaintiff went to the 9th Precinct to report what he believed to be criminal retaliation. AC ¶ 26.[2] The plaintiff asked an NYPD employee at the front desk if he could speak with a detective, and he was told by the employee that all of the detectives were busy. AC ¶ 27. She asked if she could help him. AC ¶ 27. The plaintiff explained his situation, elaborating on the retaliation against him that he believed to be criminal and the unwillingness of the District Attorney to help him. AC ¶ 28, 30. He asked if he could schedule an appointment to meet with a detective. AC ¶ 30. The NYPD employee responded that the NYPD could not help him. AC ¶ 27.

The plaintiff began to leave the stationhouse. AC ¶ 33. When he was "halfway through the door", the NYPD employee "called after him and told him to take a seat in a room across from the front desk". AC ¶ 33. The plaintiff walked into the room and was told to sit in a chair near NYPD Officer Jane Doe. AC ¶ 34. After the plaintiff took a seat and introduced

---

[2] Although the plaintiff alleges that he went to the stationhouse on December 2, 2012, this is a clerical error in view of the other dates in the Amended Complaint and should be December 2, 2013. The plaintiff included the December 2, 2012 date in his initial complaint as well as the Amended Complaint.

5

himself, Officer Jane Doe told the plaintiff that they were "going to take him to go speak with somebody". AC ¶ 35. The plaintiff assumed that Officer Jane Doe was taking him to another precinct where a detective would be available to speak with him. AC ¶ 35.

Unbeknownst to the plaintiff, an ambulance had been called to take him to Beth Israel. AC ¶ 36. When it arrived, Officer Jane Doe told the plaintiff "they were taking him to Beth Israel." AC ¶ 36. The plaintiff did not understand why the ambulance had been called and assumed it was to take him to speak with a crime victim's counselor at the hospital. AC ¶ 36. He commented that he could walk the 12-blocks to Beth Israel instead of riding in the ambulance, but he was told by Officer Jane Doe that this "was procedure and that he didn't have a choice." AC ¶ 36. The plaintiff responded "okay" and stepped into the ambulance with Officers Jane and John Doe. AC ¶ 36. According to the plaintiff's complaint, Deputy Inspector John Cappelman ordered NYPD officers Jane and John Doe to detain the Plaintiff and bring him to Beth Israel.[3] AC ¶ 98. The plaintiff was never handcuffed by the NYPD officers, nor was he ever told that he was under arrest.

---

[3] It is unclear how the plaintiff is aware of this alleged order by Deputy Inspector Cappelman.

6

Upon arriving at Beth Israel, the NYPD officers accompanied the plaintiff into the ER, where his vital signs were checked. AC ¶ 37. They then escorted him to a basement floor of the hospital, where Officer Jane Doe took him through a security door and left him in the care of hospital employees. AC ¶ 37-39.

The plaintiff was then approached by three hospital employees, BIMS John Does 1, 2, and 3, and was told that they were going to give him a medication to help him calm down. AC ¶ 40. The plaintiff protested the medication, but he was eventually physically subdued and the medication was forcibly administered. AC ¶ 40-41.

The plaintiff was first examined by Dr. Malaga Aragon, a second-year resident, who conducted an initial assessment. AC ¶ 42. Dr. Aragon filled out several forms relating to the plaintiff's condition. AC ¶¶ 43-51; Pl.'s Aff. Ex. A. Dr. Aragon noted that the plaintiff did not pose a risk to himself or others. AC ¶ 51. The plaintiff was subsequently evaluated by Dr. Anthony Lujack, who determined that the plaintiff "need[ed] admission for safety and stabilization". AC ¶¶ 53. The plaintiff alleges that he was also briefly examined by Dr. David Klahr and Dr. Aaron Patterson. AC ¶¶ 59-60, 68. The plaintiff was released from the hospital on December 9, 2013. AC ¶ 82.

# III.

## A.

The Hospital Defendants move to dismiss the § 1983 claim against them on the basis that they are not state actors and therefore cannot be held liable under the statute.

Because "the core purpose of § 1983 is to provide compensatory relief to those deprived of their federal rights by state actors," relief under that statute is only available when the "actions alleged by the plaintiffs come within the definition of 'under color of' [state] law." Kia P. v. McIntyre, 235 F.3d 749, 755-56 (2d Cir. 2000) (alterations and quotation marks omitted). "[A] private individual may be considered a state actor for purposes of a constitutional challenge if [his or her] conduct is fairly attributable to the state." Leeds v. Meltz, 85 F.3d 51, 54 (2d Cir. 1996). Thus, a § 1983 claim "may be proved by showing that a person acting under color of state law collaborated or conspired with a private person to deprive the plaintiff of a constitutional right." Singer v. Fulton Cty. Sheriff, 63 F.3d 110, 119 (2d Cir. 1995) (alterations and internal quotation marks omitted). See also Sklodowska-Grezak v. Stein, 236 F. Supp. 3d 805, 808 (S.D.N.Y. 2017).

The plaintiff does not allege that the Hospital Defendants are state officials. Rather, he contends that he was admitted to the hospital by doctors who had "decision-making authority

for the hospital with regard to involuntarily committing an individual" and had "authority to civilly commit a person against his will [pursuant to § 9.39 of the New York Mental Hygiene Law]." Pl.'s Br. Opp'n Hospital Defs.' Mot. Dismiss ("Pl.'s Hospital Opp'n Br") 3. But private health care professionals or private hospitals do not engage in state action when they involuntarily commit a patient to the psychiatric ward under Section 9.39 of the New York Mental Hygiene Law. See McGugan v. Aldana-Bernier, 752 F.3d 224, 229-31 (2d Cir. 2014); Doe v. Rosenberg, 166 F.3d 507, 507 (2d Cir. 1999) (per curiam). Therefore, the plaintiff cannot allege state action on that basis.

Considering the plaintiff's allegations in the light most favorable to his case, it appears that the plaintiff also alleges state action on the basis that the Hospital Defendants conspired with the City Defendants to admit him involuntarily into the hospital. The plaintiff stated in his opposition brief that the Hospital Defendants committed the plaintiff because "the NYPD brought him in because he was paranoid that people were out to get him" and "solely [based] upon what the NYPD relayed t[o] Beth Israel Mount Sinai." Pl.'s Hospital Opp'n Br. 5. He also alleges that he "was admitted before a . . . physician examined him" and the "reason for admission" was that

9

he was brought to the hospital by the NYPD for "persecutory delusions and paranoid ideation". AC ¶ 119.

However, the allegations that the City Defendants drove the plaintiff to the hospital and reported their interactions with the plaintiff to the hospital staff are insufficient to allege state action on the part of the Hospital Defendants. See McGugan, 752 F.3d at 230; Bryant v. Steele, 93 F. Supp. 3d 80, 91-92 (E.D.N.Y. 2015) ("[M]ere communications . . . between a private and a state actor, without facts supporting a concerted effort or plan between the parties, are insufficient to make the private party a state actor." (internal quotation marks omitted)). There are no allegations that the NYPD officers requested or compelled the Hospital Defendants to commit the plaintiff. McGugan, 752 F.3d at 230 (2d Cir. 2014); see also Algarin v. New York City Dep't of Corr., No. 06cv508 (JSR), 2006 WL 1379605, at *1 (S.D.N.Y. May 19, 2006) (allegation that a doctor acted "at the behest of [a state actor]" when he involuntarily committed the plaintiff was far too conclusory and insufficient to plead state action). Moreover, the hospital staff plainly conducted their own analyses and reached their own conclusions as to the plaintiff's mental state. See Pl.'s Aff. Exs. A-D.

Accordingly, because the Hospital Defendants were not state actors, the motion to dismiss is **granted** with respect to the § 1983 claim against them.

**B.**

The Hospital Defendants also move to dismiss the state law claim for medical malpractice.

While this claim was included in the initial complaint, the plaintiff has since abandoned this claim. See Pl.'s Hospital Opp'n Br. 6 ("This claim should be dismissed without prejudice."); May 4, 2017 Tr. 6:2-10 ("MR. WILLIAMS: I withdrew my medical malpractice claim."); May 4, 2017 Order at 1 ("The plaintiff has further agreed to withdraw his medical malpractice claim.").

Moreover, the Court would decline to exercise supplemental jurisdiction over this claim, because it is the sole surviving state law claim against the Hospital Defendants.

The "decision whether to exercise [supplemental] jurisdiction after dismissing every claim over which [a court] had original jurisdiction is purely discretionary." Carlsbad Tech., Inc. v. HIF Bio, Inc., 556 U.S. 635, 639 (2009); see Delaney v. Bank of Am. Corp., 766 F.3d 163, 170 (2d Cir. 2014) (per curiam). All federal claims against the Hospital Defendants have been dismissed. Given that state courts have particular expertise in medical malpractice claims, and the

11

relatively early stage of the litigation, the Court exercises its discretion to decline to exercise supplemental jurisdiction. See Williams v. Rosenblatt Sec. Inc., 136 F. Supp. 3d 593, 614 (S.D.N.Y. 2015), opinion reinstated on reconsideration, No. 14cv4390 JGK, 2015 WL 6509112 (S.D.N.Y. Oct. 28, 2015), and reconsideration denied, No. 14cv4390 (JGK), 2016 WL 590232 (S.D.N.Y. Feb. 11, 2016); In re Beacon Assocs. Litig., 745 F. Supp. 2d 386, 435-36 (S.D.N.Y. 2010) (Sand, J.) (declining to exercise supplemental jurisdiction over state law claims against one defendant while federal claims remain as to other defendants); Stewart v. John Dempsey Hosp., No. 303cv1703 (WWE), 2004 WL 78145, at *4 (D. Conn. Jan. 9, 2004) (same).

Accordingly, the Hospital Defendant's motion to dismiss the medical malpractice claim against them is **granted** and that claim is dismissed without prejudice.

### IV.

### A.

The City Defendants move to dismiss the § 1983 claim against them on the basis that the plaintiff was not "involuntarily" seized within the meaning of the Fourth Amendment. They argue that the plaintiff was free to leave the police station or the company of the police officers at any time during the December 2, 2013 incident.

In the absence of a formal arrest, a seizure under the Fourth Amendment occurs where a "reasonable person would have believed that he was not free to leave." INS v. Delgado, 466 U.S. 210, 215 (1984) (quoting United States v. Mendenhll, 446 U.S. 544, 554 (1980)); Gardiner v. Inc. Vill. of Endicott, 50 F.3d 151, 155 (2d Cir. 1995) ("[A] seizure occurs only when a reasonable person would feel restrained by physical force or a show of authority."). Factors suggesting that a seizure has occurred include, among others, "the threatening presence of police officers; . . . physical contact by the officer; language indicating that compliance with the officer is compulsory; . . . and a request by an officer to accompany him or her to the police station or police room." Gardiner, 50 F.3d at 155.

Accepting his allegations as true, as the Court must at this stage, the plaintiff has sufficiently pleaded that he was involuntarily seized. The plaintiff alleges that, when he was on his way out of the stationhouse, a NYPD employee "called after him and told him to take a seat in a room across from the front desk", where he was directed to take a seat near NYPD Officer Jane Doe. AC ¶ 33-34. After a short conversation, the plaintiff alleges that he was "informed" that he was being taken to Beth Israel. AC ¶ 36. When the plaintiff offered to walk, the NYPD officer responded that riding in the ambulance was "procedure" and that "he didn't have a choice." AC ¶ 36. The

13

plaintiff also alleges that Deputy Inspector Cappelman ordered NYPD Officers Jane Doe and John Doe "to detain the plaintiff and have him transported to" Beth Israel. AC ¶ 98.[4] The two NYPD officers accompanied the plaintiff to the hospital in the ambulance and into the ER, and Officer Jane Doe accompanied him through a security door into a secured ward. AC ¶ 37.

The various directions and orders given by the NYPD employees to the plaintiff throughout the encounter, including to enter the police room, to sit near Officer Jane Doe, and to ride in the ambulance, along with the continual presence of two NYPD officers during his trip to the hospital, is sufficient to allege that a "reasonable person would have believed that he was not free to leave". Delgado, 466 U.S. at 215; see also Gardiner, 50 F.3d at 154. Therefore, the plaintiff has pleaded that he was seized within the meaning of the Fourth Amendment.

**B.**

In their opening brief, the City Defendants also argued that they are entitled to qualified immunity "even if plaintiff was seized [once he arrived] at Beth Israel Hospital for the purposes of his false arrest/imprisonment claim and did not consent to such seizure." City Defs.' Br. 7. However, they did

---

[4] It is unclear what basis the plaintiff has to make his allegations against Deputy Inspector Cappelman, but that issue is not raised in this motion.

14

not raise the defense of qualified immunity with respect to the conduct of the officers before the plaintiff arrived at the hospital, and it is that conduct that forms the basis for the plaintiff's claim of an unconstitutional seizure by the police officers.

On reply, the City Defendants argued in a single sentence that Deputy Inspector Cappelman would be entitled to the defense of qualified immunity even if the Court determined that the plaintiff was seized and taken to the hospital involuntarily. City Defs.' Reply Br. 2-3. However, arguments raised for the first time in reply should not be considered, because the plaintiff had no opportunity to respond to those new arguments. See, e.g., Bertuglia v. City of New York, 839 F. Supp. 2d 703, 737 (S.D.N.Y. 2012). Therefore, no claim of qualified immunity was properly made by the City Defendants with respect to the conduct of Deputy Inspector Cappelman before the plaintiff arrived at the hospital.[5]

Accordingly, the City Defendants' motion to dismiss the § 1983 claim against them is **denied**.

---

[5] The City also makes a fleeting argument that the officers' involuntary seizure of the plaintiff was privileged because they correctly determined that he was mentally ill. City Defs.' Reply Br. 2-3. The Court need not consider this argument because it was also raised for the first time in reply and was entirely unsupported. See Bertuglia, 839 F. Supp. 2d at 737.

## C.

The City also moves to dismiss the *Monell* claim, arguing that the allegations with respect to this claim are merely conclusory and do not state a plausible claim. Reading the Amended Complaint in the light most favorable to the pro se plaintiff, and considering the allegations set forth in his opposition to the motion to dismiss, the plaintiff has sufficiently alleged a *Monell* claim based on a failure to train.

To state a claim for *Monell* liability based on a failure to train, the plaintiff must allege "a specific deficiency in the municipality's training program that is closely related to the ultimate injury, such that it actually caused the constitutional deprivation." Guerrero v. City of New York, No. 16cv516 (JPO), 2017 WL 2271467, at *2 (S.D.N.Y. May 23, 2017).

Further, the plaintiff must allege that the specific deficiency in training amounts to "deliberate indifference to the rights of persons with whom the [untrained employees] come into contact." Connick v. Thompson, 563 U.S. 51, 61 (2011) (internal citation omitted); see also Amnesty Am. v. Town of W. Hartford, 361 F.3d 113, 129 (2d Cir. 2004) ("[A] municipality can be liable for failing to train its employees where it acts with deliberate indifference in disregarding the risk that its employees will unconstitutionally apply its policies without

16

more training.") (citing City of Canton v. Harris, 489 U.S. 378, 387-90 (1989)).

The Second Circuit has set forth three requirements that must be met before a municipality's failure to train constitutes a "deliberate indifference": (1) "a [municipality] knows 'to a moral certainty' that her employees will confront a given situation," (2) "the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or that there is a history of employees mishandling the situation," and (3) "the wrong choice by the city employee will frequently cause the deprivation of a citizen's constitutional rights." Walker v. City of New York, 974 F.2d 293, 297-98 (2d Cir. 1992) (internal citations omitted).

Applying this standard, the plaintiff has sufficiently pleaded a *Monell* claim for failure to train. The plaintiff has alleged that the NYPD has deficiently trained its officers on properly dealing with mentally ill individuals in the course of their duties, specifically with respect to when involuntary committal of such individuals is appropriate. The plaintiff cites secondary sources that support that proposition and further points to a program that the City has allegedly only recently begun, after the events at issue in this case, to train police officers to deal with the mentally ill.

17

The plaintiff has also alleged that the deficiency in training is closely related to the ultimate injury and actually caused the plaintiff's deprivation. The plaintiff alleges that he would not have been taken to the hospital if the officers had been properly trained to deal with the mentally ill, because they would have known that he showed no signs of dangerousness and was not a threat to himself or others.

Further, the plaintiff has adequately alleged under Walker that the City acted with "deliberate indifference" with respect to this deficient training. First, the City knows that NYPD officers will interact with mentally ill individuals during the course of their duties. Second, when presented with a situation involving possibly mentally ill individuals, NYPD officers are faced with a difficult choice: whether to restrain the person involuntarily and bring the person to the hospital for possible commitment or to allow the person to remain free. Moreover, the plaintiff has presented some evidence that the NYPD has a history of mishandling situations with mentally ill individuals. With respect to the third prong, it is plain that, where an NYPD officer wrongly determines that an individual must be detained for mental assessment, that action will frequently deprive that individual of the constitutional right to be free from an unreasonable seizure.

18

The plaintiff's allegations may be difficult to prove and the choices faced by police officers dealing with persons who are possibly mentally ill may also be very difficult. But at this stage, the issue is only whether the factual content alleged by the plaintiff, accepted as true, "allows the court to draw the reasonable inference that the defendant is liable for the conduct alleged." Iqbal, 129 S. Ct. at 1949. Accordingly, the City's motion to dismiss the Monell claim is **denied**.

### CONCLUSION

The Court has considered all of the arguments raised by the parties. To the extent not specifically addressed, the arguments are either moot or without merit. As explained above, the Hospital Defendants' motion to dismiss is **granted**, and the City Defendants' motion to dismiss is **denied**.

The Clerk is directed to close **Docket Numbers 34 and 48**.

**SO ORDERED.**

Dated:   New York, New York
         September 14, 2017

_____
John G. Koeltl
United States District Judge

19